**In the Matter of PENN CENTRAL TRANSPORTATON COMPANY, Debtor.**

**In re PROPOSED SETTLEMENT AGREEMENT WITH MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.**

**No. 70–347.**

United States District Court, E. D. Pennsylvania.

May 1, 1972.

Ivan Shomer, Philadelphia, Pa., and Richard J. Ferriter, Boston, Mass., for the trustees, Penn Central Transportation Co.

Tate & Ervin by Spencer Ervin, Jr., and Wilbur Bourne Ruthrauff, Philadel-

phia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford Railroad.

Morgan, Lewis & Bockius by John N. Schaeffer, Jr., and Peter Koury, Philadelphia, Pa., for The Fidelity Bank and Joseph F. McDonald, indenture trustees.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

James Dausch, Dept. of Justice, for the United States.

Ballard, Spahr, Andrews & Ingersoll, by Morris Cheston, Jr., Philadelphia, Pa., for Morgan Guaranty Trust Co. of New York, Bankers Trust Co., First Pennsylvania Bank & Trust Co., Girard Trust Bank, Irving Trust Co., Manufacturers Hanover Trust Co., Mellon National Bank, New England Merchants National Bank, and United States Trust Co.

## MEMORANDUM AND ORDER NO. 682

[Re: Proposed Settlement Agreement with Massachuetts Bay Transportation Authority]

FULLAM, District Judge.

In 1965, a predecessor of the Debtor [1] conveyed certain property in Massachusetts to the Massachusetts Bay Transportation Authority ("MBTA") for the purpose of enabling MBTA to construct a high-speed commuter line. Under the terms of the conveyance, the railroad retained an easement for the purpose of continuing to conduct rail freight operations over certain portions of the premises, including a line on the former Old Colony right-of-way between the Quincy, Massachusetts freight house and the Neponset River. It was provided that the railroad's easement would automatically terminate if the railroad abandoned its operations on the line, or if the easement were relocated.

Two years later, in 1967, it became apparent to MBTA that the railroad's operations over this easement would interfere with the construction of the commuter line by MBTA. Accordingly, the parties then entered into an agreement which provided that the railroad would suspend its freight operation over the easement for a period of one year, permitting MBTA to remove the tracks which interfered with its construction program. MBTA agreed to compensate the railroad for its loss of revenues during the suspension period, and further agreed to restore the railroad's easement within one year. The agreement provided for liquidated damages at the rate of $200 per day for each day beyond the one-year suspension period that MBTA failed to restore the railroad's easement.

To date, the railroad's easement has not been restored. In connection with litigation and negotiations which led to the entry of Order No. 127 in these proceedings, the railroad released MBTA from all claims for liquidated damages by reason of the failure to comply with the restoration provision, but did not discharge MBTA from its obligation to rebuild and restore the easement.

It would cost MBTA at least $350,000 to restore the easement to operable condition. As a practical matter, however, the railroad has no need for the easement. Under present and foreseeable circumstances, the restored easement would constitute merely a spur track which would produce no revenues. It has therefore been agreed between MBTA and the railroad, subject to the approval of this Court, that the railroad will release MBTA from its obligation to rebuild the track and restore the easement, upon payment by MBTA to the railroad of the sum of $250,000. The Trustees of the Debtor have petitioned for approval of the proposed settlement.

At the hearing, it was made clear that all parties agree that the proposed set-

---

1. The trustee of the New York, New Haven and Hartford Railroad Company. Unless otherwise indicated, the term "the rail-road" will be used interchangeably in this opinion to designate the Debtor and its predecessors.

tlement is desirable and that the price is fair and reasonable. However, there is a dispute between the Trustees and certain indenture trustees with respect to the proper disposition of the proceeds of the settlement. The Trustees contend that the proceeds should be made available for general operating purposes, while the indenture trustees contend that the proceeds should be held subject to the liens of their respective mortgages, and should be deposited in escrow pursuant to the provisions of Order No. 619 herein.

The mortgages represented by the various indenture trustees became liens as of December 31, 1968. At that time, operations over the line in question had been suspended and the tracks had been physically removed, but MBTA was under an obligation to restore, as outlined above. The indenture trustees argue that the present release transaction is equivalent to a sale by the Trustees of an interest in property which was subject to the liens of their mortgages, since the payment is in reality a payment for the termination of the easement. The Trustees, on the other hand, point out that the mortgages became liens only upon an easement which was terminable in the event of abandonment of service, hence the lien value was nominal at best; and that if the Trustees were to reject the proposed settlement and insist upon reconstruction of the spur track (a clearly permissible alternative) the lien value would not be substantially enhanced. Accordingly, they argue, it is unrealistic to view the $250,000 payment as compensation for terminating the easement, or as the sale price of any interest which was subject to the lien of the mortgages.

■ While the matter is not free from doubt, I have concluded that the indenture trustees are more nearly correct in their assertions. The railroad has been compensated for its loss of revenue, including whatever claim the Trustees may properly have had for liquidated damages. Thus, it is difficult to treat the payment presently proposed as in substitution for operating revenues. And while I agree with the Trustees' argument that this transaction should not be regarded as the sale of the easement, or as compensation for termination of the easement, I believe it is nevertheless subject to the liens of the mortgages.

■ The mortgages became liens upon whatever interest the railroad had in the property in question as of December 31, 1968. MBTA's covenant to restore the easement was, as of that date, a covenant running with the land, and constituted an interest in the real estate. By virtue of the present transaction, the Trustees are disposing of this interest in the property for a valuable consideration. The lien should attach to these proceeds.

■ I recognize that the sum of $250,000 probably exceeds the actual value of the Trustees' interest in the property at the time the mortgages became liens. But fluctuations in value of liened property do not have the legal effect of discharging liens, either in whole or in part. In the absence of any record basis for allocating any part of the consideration to anything other than relinquishment of an interest in the real estate (*i. e.*, the covenant to rebuild), the entire sum must be regarded as subject to the liens upon the interests now being terminated.

### ORDER NO. 682

And now, this 1st day of May, 1972, upon consideration of the Petition of the Trustees Seeking Approval to Enter into a Settlement Agreement with the Massachusetts Bay Transportation Authority, and after hearing duly noticed, it is ordered that:

1. The Trustees are authorized to execute and carry out the settlement agreement with the Massachusetts Bay Transportation Authority referred to in that Petition (Document No. 2862).

2. The $250,000 proceeds from the settlement shall be deposited pursu Order No. 619 in these proceedii.